IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**STEPHANIE FORT**                                                                                         **PLAINTIFF**

**VERSUS**                                    **CIVIL ACTION NO.:** 4:23cv226-DMB-JMV
                                                                                  **JURY TRIAL DEMANDED**

**MILWAUKEE ELECTRIC TOOL CORPORATION**
**d/b/a MILWAUKEE TOOL**                                                     **DEFENDANT**

## COMPLAINT

Plaintiff, STEPHANIE FORT, by and through her attorneys, Johnson & Bennett, PLLC, brings this Complaint for a cause of action arising under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981 and states as follows:

## PARTIES

1. Plaintiff, Stephanie Fort (black), is an adult citizen of Tchula, Holmes County, Mississippi.

2. Defendant, Milwaukee Electric Tool Corporation d/b/a Milwaukee Tool, is a Profit Corporation organized under the laws of the State of Delaware and doing business in Mississippi at 1003 Sycamore Avenue, Greenwood, Mississippi 38930. Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964 (Title VII). Defendant can be served process through its registered agent, Corporation Service Company, 109 Executive Drive, Suite 3, Madison, Mississippi 39110.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This Court has authority to award costs and attorney fees under 42 U.S.C. § 1988.

4. Venue under 42 U.S.C. § 2000e-5(f) is proper in this district because a substantial part of the unlawful employment practices complained of were in Leflore County, Mississippi which is within the Northern District of Mississippi, Greenville Division.

5. On February 13, 2023, Plaintiff timely filed a Charge of Discrimination (423-2023-00056) with the United States Equal Employment Opportunity Commission (EEOC) asserting Defendant violated Title VII of the Civil Rights Act of 1964 for race (black) discrimination and retaliation, attached as Exhibit A.

6. On August 30, 2023, the EEOC issued Plaintiff a Determination and Notice of Rights, attached as Exhibit B.

7. Plaintiff timely files this action.

## FACTS

8. Plaintiff, Stephanie Fort, is a black female.

9. Ms. Fort lives with her son, who is diagnosed with autism spectrum disorder and attention deficit hyperactivity disorder, and her elderly mother, caring for both.

10. On February 22, 2010, Defendant hired Ms. Fort as a Quality Technician I at its Greenwood, Mississippi facility.

11. Ms. Fort was promoted over the years and in 2021 was a Quality Tech III working in the laboratory in Building 1, where Plaintiff worked.

12. Ms. Fort worked in the laboratory during her tenure with Defendant as a Quality Tech until she sought and was selected as Quality Team Lead II.

13. In early 2021, Ms. Fort applied for the position of Quality Team Lead II for the 1st shift.

14. The posting for the Team Lead position indicated that the position was for 1st shift, but might require some work on 2nd and 3rd shifts at times.

15. In May 2021, Ms. Fort received notice of her promotion to Team Lead II for the Quality Department (Quality).

16. On June 21, 2021, Defendant officially promoted Ms. Fort as the Quality Team Lead II.

17. As Quality Team Lead II, and prior to her promotion to Team Lead, Ms. Fort reported to Eric Lovell (white) until approximately March 12, 2022.

18. Lovell promoted Ms. Fort to the position of Team Lead II.

19. There was not a separate Quality Team Lead II for 2nd and 3rd shifts.

20. Lovell informed Ms. Fort that she might have to work on 2nd or 3rd shift at times, but the Quality Team Lead II position Ms. Fort filled was for 1st shift.

21. Ms. Fort worked as Team Lead II on the 1st shift until Lovell left as her supervisor in March of 2022.

22. Lovell continued to be a Quality Supervisor, but moved from Building 1 to Building 2.

23. On March 16, 2022, Ms. Fort began to report to Margaret (Betsy) Campbell (white), Quality Supervisor.

24. Supervisor Campbell asked Ms. Fort to temporarily move to 2nd shift.

25. Ms. Fort agreed to temporarily move to 2nd shift to support the business.

26. Ms. Fort worked 2nd shift as Team Lead II for the subsequent couple of weeks.

27. On March 28, 2022, Ms. Fort emailed Supervisor Campbell and requested to be returned to her regular shift, the 1st shift.

28. Campbell responded the same day, stating, "No," and indicated that Lovell and Campbell both intended to rely on their Team Leads to manage off shifts (2nd and 3rd).

29. Ms. Fort replied to Campbell's email, asking if the assignment as Team Lead II on 2nd shift was permanent or temporary.

30. Campbell responded back to Ms. Fort that Campbell intended to permanently make the Quality Team Lead II position one that worked only off-shifts.

31. Ms. Fort responded to Campbell that Plaintiff and Campbell had never discussed being on an off-shift permanently.

4

32. When Ms. Fort arrived for 2nd shift later on March 28, 2022, Campbell called Plaintiff into the office and asked whether Plaintiff had decided on what shift Plaintiff wanted to work.

33. Ms. Fort told Campbell that she was not able to work 2nd shift, 3 PM to 11 PM, because Ms. Fort had to meet her son's bus when he got out of school due to his disability.

34. Campbell asked Ms. Fort whether 7 PM to 3 AM would be okay.

35. Ms. Fort told Campbell that she wanted to think about it.

36. When Campbell, again, asked Ms. Fort if she had decided what shift she wanted to work on, Ms. Fort told Campbell that she wanted to work on 1st shift.

37. Campbell advised Ms. Fort that working on 1st shift "might not be possible" because a Team Lead was not needed on 1st shift.

38. Ms. Fort went to Human Resources the following morning and complained about not being allowed to return to 1st shift even though she had worked 1st shift for approximately 9 years, including almost a year as Quality Team Lead II.

39. Human Resources advised Ms. Fort that a meeting would take place, but nothing happened.

40. To facilitate moving back to 1st shift, Ms. Fort had to resign as Team Lead II.

41. Ms. Fort returned to 1st shift on April 4, 2022, as a Quality Tech III.

42. Ms. Fort asked Campbell to if she could return back to the laboratory as a Quality Tech III.

5

43. Campbell did not allow Ms. Fort to return to the lab as a Quality Tech III, but told Plaintiff to remain on the floor as an auditor.

44. The procedures on the floor for a Quality Tech III were different than the procedures Ms. Fort was used to working in the lab.

45. Ms. Fort was not satisfied with the lack of response Human Resources had to her complaint that Campbell was treating her unfairly.

46. Ms. Fort emailed Defendant President, Steve Richman, about Campbell's unfair treatment towards Plaintiff, as well as other black employees.

47. President Richman replied that he would have someone contact Ms. Fort.

48. Ms. Fort received a phone call following her email to Richman and was told that Supervisor Campbell should not have been allowed to move her to another shift permanently without meeting about the shift change for the position of Quality Team Lead II.

49. On May 20, 2022, after Ms. Fort made her complaints to the President and HR, Supervisor Campbell retaliated by issuing Ms. Fort's first write-up since she began working for Defendant.

50. Supervisor Campbell stated that Ms. Fort was outside the plant 10 minutes prior to the end of her shift during the week of May 16 – May 19, 2022, using a mobile device to clock out of work at 3 PM.

51. During Ms. Fort's employment with Defendant, at the end of 1st shift, the Defendant's assembly line halted at 2:45 PM for clean-up.

6

52. After clean-up, all of the shift members lined up at the time clocks around 2:50 PM, where the workers waited until 3 PM to clock out.

53. There were two time clocks with lines of at least 20 employees waiting to clock out at 3 PM.

54. Defendant provided Ms. Fort, as well as supervisors and other team leads, a company cell phone.

55. Defendant allowed supervisors and team leads to clock out on company issued cell phones.

56. Defendant afforded Ms. Fort the ability to clock out using a mobile device.

57. Campbell wrote Ms. Fort up for clocking out at 3 PM from the parking lot using her mobile device rather than waiting in line with the other shift members to clock out using the time clock at 3 PM and thereafter until the line dispersed.

58. Ms. Fort clocked out on her phone prior to leaving the plant premises.

59. On September 16, 2022, Campbell sent the Quality Technicians working the floor an email setting forth the procedures for end of shift and a link to share the information with corporate.

60. On October 11, 2022, Defendant terminated Ms. Fort for alleged discrepancies with her review of the manufactured product during the week of October 6, 2022.

61. The alleged deficiencies with Ms. Fort's inspection of the product, blades, related to procedures applicable to Quality Technicians working on the floor.

7

62. Procedures for Quality Technicians working in the laboratory, where Plaintiff worked during the majority of her time with Defendant, were different than those applicable to Quality Technicians working on the floor.

63. Campbell used the floor procedures to retaliate against Ms. Fort by terminating Plaintiff rather than providing any training or progressive discipline to Ms. Fort on the floor procedures.

64. Campbell terminated Ms. Fort because Ms. Fort complained to President Richman about the unfair treatment by Campbell towards Plaintiff and other black employees.

65. Ms. Fort included information in her complaint to Richman dealing with Campbell's unfair and unequal treatment of black employees in Quality.

66. In addition to terminating Plaintiff from Quality, Campbell terminated other Quality black employees, Veronica Strong (black), Tameeka Sprolls (black), Kendrick Hopkins (black) and Karen Johnson (black) between March and October 2022.

67. Campbell bullied black employees and routinely referred to employees as "bitches."

68. Campbell was responsible for Ms. Fort's first and only write-up during her employment with Defendant in May of 2022, which was for a supposed time clock violation.

69. Ms. Fort worked for Defendant for over 12 years without a write-up and received her only write-up from Campbell.

70. Campbell emailed procedures for Quality in September of 2022 and terminated Ms. Fort for violating said procedures just over two weeks later.

71. A coworker reported to Ms. Fort that the real reason for Plaintiff's termination was that Campbell believed Ms. Fort would apply for Campbell's job due to Campbell anticipating a promotion up from Quality Supervisor.

72. Ms. Fort had previously applied for Quality Supervisor when Lovell was selected to fill the position for Building 1.

73. The co-worker reported that Campbell did not want Ms. Fort to be eligible for Campbell's Quality Supervisor position, so Campbell terminated Plaintiff.

74. After Campbell's promotion, Defendant hired a white male to replace Campbell as Quality Supervisor.

75. Defendant favored its white employees over Plaintiff and other black employees by allowing its predominantly white supervisory and management employees to fabricate reasons for termination such as Campbell did with Ms. Fort.

76. The real reason for Ms. Fort's termination is because of her race and her complaints about Campbell's unfair and unequal treatment of black employees, in general, and of Ms. Fort, specifically.

77. Ms. Fort lost valuable pay because Campbell moved her Team Lead II position from 1st shift to 2nd shift without discussing the shift change with anyone before attempting to make Ms. Fort's 1st shift Team Lead II position to a permanent off shift position.

78. Ms. Fort was unable to permanently move to an off shift.

79. Plaintiff lost wages, suffered mental anxiety and stress, and lost valuable benefits as a result of Defendant's actions.

80. Defendant violated Plaintiff's right to be free from discrimination under 42 U.S.C. § 1981 and the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*.

81. Defendant's violations of Plaintiff's statutory rights under Title VII and § 1981 were intentional and willful and done in direct disregard for Plaintiff's right to be free from such unlawful discriminatory activity.

82. The unlawful actions of the Defendant complained about above were intentional, malicious, and taken in reckless disregard of the statutory rights of the Plaintiff, warranting the imposition of punitive damages.

83. Defendant's violation of Plaintiff's statutory rights under Title VII were intentional and willful and done in direct disregard for Plaintiff's right to be free from retaliation for protected activity undertaken pursuant to the aforementioned Act.

84. Defendant's violation of Plaintiff's statutory rights under § 1981 were intentional and willful and done in direct disregard for Plaintiff's right to be free from retaliation for protected activity.

85. The unlawful actions of the Defendant complained about above were intentional, malicious, and taken in reckless disregard of the statutory rights of the Plaintiff, warranting the imposition of punitive damages for its egregious actions.

## **PRAYER FOR RELIEF**

86. Plaintiff sustained substantial monetary and non-monetary damages as a result of Defendants' unlawful conduct, and Ms. Fort demands such legal and equitable relief as will effectuate the purposes of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, and 42 U.S.C. § 1981, including but not limited to:

a. Accrual of back pay;

b. Lost wages as a result of the unlawful demotion;

c. Reinstatement;

d. Front pay (in lieu of reinstatement);

e. Fringe benefits, and other emoluments of employment;

f. Compensatory damages;

g. Punitive damages;

h. Loss of enjoyment of life;

i. Lost opportunities;

j. Costs and attorney fees;

k. Appropriate affirmative action;

l. Any other equitable relief to which Plaintiff may be entitled;

m. Any interest due on the amount awarded; and

n. Any other relief that this Court deems just and equitable.

87. Plaintiff prays that a jury be empaneled to decide this matter and determine damages, and that Plaintiff be reinstated and awarded reasonable attorney fees, costs, and interest.

THIS the 28th day of November, 2023.

Respectfully submitted,
STEPHANIE FORT

**s/ Kristy L. Bennett**
KRISTY BENNETT BPR# 99525
TRESSA V. JOHNSON BPR# 104892
Attorneys for Plaintiff
Johnson & Bennett, PLLC
1407 Union Ave., Ste. 807
Memphis, TN 38104
(901) 402-6601
kristy@myjbfirm.com
tressa@myjbfirm.com
